## POTLATCH CORPORATION *v.* Jerry D. HANNEGAN et ux

CA 79-86                                    586 S.W. 2d 256

Opinion delivered August 29, 1979
and released for publication September 25, 1979

*Haley & Claycomb,* for appellant.

*Michael R. Landers,* for appellees.

GEORGE HOWARD, JR., Judge. The issue tendered by appellant, Potlatch Corporation, for review[1] is whether the trial court's action in quieting title to eleven and one-half acres of land in appellees, Jerry D. Hannegan and Mary F. Hannegan, is supported by a preponderance of the evidence.

Jerry and Mary Hannegan's petition to quiet title, in material part, is as follows:

That the plaintiffs acquired title to said lands by exercising open, notorious and continuous possession of said property along with their predecessors in title since the year 1922 and have occupied said lands adversely . . . since that date.

Potlatch, among other things, denied that petitioners were entitled to the requested relief and asserted:

[T]he possession alleged by Plaintiffs was begun by permission . . . and no notice that this permissive holding had changed to adverse holding was ever brought to Defendant or its predecessors in title prior to the spring of 1978.

The trial court found:

1. The old original fence along the western boundary of the property of the Plaintiffs was erected as a division line between the properties and was extended in 1921 to its present location; that Plaintiffs were in actual possession of the entire disputed area which was adverse to Defendant's predecessor in title; such possession continued many years past the statutory period and ripened into ownership in Plaintiffs' predecessor in title before this Defendant acquired its property.

2. That Defendant has not exercised ownership of the disputed area inside the fence line since its acquisition of the property, has had actual notice of the fence

---

[1]This appeal was originally lodged in the Arkansas Supreme Court, but was transferred to this Court under Rule 29(3) of the Rules of the Arkansas Supreme Court.

line since the early 1960's and has acquiesced in the fence as a division line.

While a proceeding on appeal from a chancery court is reviewed *de novo*, it is well recognized that appellate courts will affirm where the holding of the trial court is supported by a preponderance of the evidence.

After carefully reviewing the record, we are persuaded that the findings of the Calhoun County Chancery Court are not against the preponderance of the evidence. We, therefore, affirm the decision.

In order for a claimant to establish ownership to property by adverse possession, he has the burden of proof to show, by a preponderance of the evidence, possession for seven years; that possession was actual, open, notorious, continuous, hostile, exclusive and accompanied with an intent to hold against the true owner. *Stricker* v. *Britt*, 203 Ark. 197. Moreover, the hostile character of possession is determined by the occupant's own views, actions and intentions and not those of his adversary.

Frank Hannegan, an uncle of petitioner, who was born and reared on the property, testified that Millie Hannegan, his mother, took possession of the property in 1914 when she acquired a warranty deed from C. B. Ivy to an eighty acre tract of land that is adjacent to the property in question; that an ancient fence partially enclosed the land in question and in 1921 the fence was extended to enclose completely the eleven and one-half acres; that between 1914 and 1928, the Hannegans cultivated row crops on the land and that he personally plowed the ground with a mule and Georgia stock; that timber representatives of Freeman Lumber Company, one of appellant's predecessors, would stay in the Hannegan home while checking timber for their employer and that these representatives observed the cultivation and enclosure of the land.

Jerry D. Hannegan testified that he was born on the property, but did not live on it continuously; that between 1946 and 1965 the land was farmed and used as a grazing

area for cattle intermittently; that after his father's death in 1965, he rented the property to Neal Reynolds; that he maintained the fence, kept the ground bush-hogged, and moved back on the place during the spring of 1974; that there has never been any dispute or controversy about the location of the fence.

John R. Todd and Hugh Booth who had known the Hannegan Farm since the middle 1960's testified that the property was known as the Hannegan Place.

Clifton Wright testified that he had known the Hannegan Farm since 1919 and the property was in cultivation at that time; that he visited the Hannegan Place in 1944 and the fence was intact; and that the fence was regarded as the boundary line.

Anthony Woods, who was called as a witness by appellant, testified:

Q. All right, Mr. Woods, while you were out there working, do you know who really owned — who actually owned — the land that you were working on?

A. Well, nothing more only just what they told me that it belonged to Mr. Roy Hannegan. That's what he said was his place. That's all I ever knowed.

Allison Means, a witness called by appellant, testified that he made a survey of the area in 1960; that he discovered the fence encroachment and reported the matter to Rusty Powell, forester for appellant.

The thrust of appellant's argument for reversal is that appellees' predecessors' entry was permissive and that no notice of adverse holding was communicated to it until the spring of 1978; and that appellant has paid all of the ad valorem taxes due. The only testimony offered to establish permissive possession is a purported policy of lumber companies in the area during the 1920's and 30's authorizing their neighbors to cut firewood and make use of certain open lands for farming purposes. Frank Hannegan acknowledged

his awareness of such a policy, but stated emphatically that he knew of no policy arrangements with reference to the lands in question. Giving this testimony whatever weight it deserves, we are persuaded that it falls short in establishing that appellees' possession is permissive in scope.

Moreover, payment of taxes is not essential to establish a claim of title by adverse possession to improved and enclosed lands where claimant and his predecessors are in actual possession.

Affirmed.