Matthew COULSON (Surviving heir of
Sara Ann COULSON), Emma Mamie BARCUS
and Hannah VINCE, Heirs at Law of
J.R. ENGLISH, Deceased
*v.* Robert D. HILLMER and
Bernice B. HILLMER, Husband and Wife

CA 80-367                                   612 S.W. 2d 124
Court of Appeals of Arkansas
Opinion delivered February 11, 1981

*Walters, Davis & Cox*, for appellants.

*Douglas W. Parker*, for appellees.

JAMES R. COOPER, Judge. This is an appeal from a determination by the Chancery Court of Sebastian County holding that appellees were entitled to have their title to eighty acres of land in Sebastian County confirmed by reason of adverse possession and by reason of an "expressed survivorship title" in appellees' predecessors in title. The Hillmers, plaintiffs in the trial court, filed their petition to quiet title on November 5, 1979.

On September 27, 1924, J.R. English and C.F. Bach took title as tenants in common to the eighty acres in question. English and Bach, who were unmarried and not related, lived on the property until their deaths. There was testimony indicating that they may have made two or more wills each, but the purposes of this case, each died intestate.

J.R. English died in 1963, leaving three sisters surviving him, namely Sara Ann Coulson, Emma Mamie Barcus, and Hannah Vince, who succeeded to his interest in the property. Sara Ann Coulson is now deceased, leaving Matthew

Coulson as her sole heir. Matthew Coulson, Emma Mamie Barcus, and Hannah Vince were the defendants in the trial court, and are the appellants here.

After the death of J.R. English, C.F. Bach lived on the property alone, and paid or caused to be paid the taxes until his death on August 10, 1977. Bach was ninety-three years old at the time of his death, and for a number of years prior to his death the only portion of the property used by him was the small house where he lived. No improvements were made on the land during the lifetime of Bach, and appellee Robert D. Hillmer testified that when he bought the property in October of 1977, the windows were starting to fall out of the house, the barn was rusting down, the old fence was on the ground, and the land was grown up in briars and brush.

On August 1, 1966, C.F. Bach executed a warranty deed purporting to convey the entire estate in the property to his sister, Fannie Sharp, and his niece, Evelyn Bernardin, reserving a life estate to himself. There was no visible change in the possession or control of the property after the execution and recording of the deed. On February 27, 1976, Fannie Sharp executed a warranty deed conveying her undivided one-half interest to Vermell Daffron, her daughter.

On October 10, 1977, Evelyn Bernardin and Vermell Daffron executed a warranty deed conveying the entire estate in the eighty acres to appellees. After an unsuccessful effort to obtain a quitclaim deed from the appellants, the appellees filed their petition to quiet title. In an alternative petition subsequently filed, the Hillmers asked that should the respondents below be declared to be one-half owners of the property, the Hillmers be reimbursed for their expenses in improving the property. The Hillmers allege extensive improvements on the property and the appellants concede in their response to the alternative petition that the Hillmers should be entitled to the current value of any such improvements. In their response, appellants proposed that the property be partitioned.

Vermell Daffron testified that J. R. English and C. F. Bach had a verbal agreement that if one passed away, the

other one got what was left, and that Bach had claimed the land as his own after English died. She stated that she and her sister, Evelyn Bernardin, paid the taxes for thirteen years; that she saw a will that had been executed in 1966 by C. F. Bach, and ". . .it said at his death that it went to his sister, Fannie Sharp, and to his niece, Miss Evelyn Bernardin." She further stated that the will was not probated after Bach's death, but that she wrote Emma Barcus, one of the appellants, and told her the farm was going to be sold, and that if she, Emma Barcus, had any interest in it, "My advice to you is to come on down and get a lawyer and put in for your part."

Appellant Matthew Coulson is sixty-nine years old and lives in Kansas City, Missouri. He testified that he and his family visited J. R. English and C. F. Bach from time to time; that he heard a discussion between English and Bach regarding wills, and that English read his will; that it provided that "the one that lived the longest was to live on the property, keep the taxes paid until they passed away, and then it should be divided equally among the heirs." Coulson also stated that after the death of English, Bach wrote Emma Barcus "all the time" and reported that he had paid the taxes; that Bach lived on the property with the permission of Coulson's mother and aunts. He testified that he had no knowledge of the deed made by C. F. Bach in 1966 until November of 1979.

For reversal, appellants argue that (1) there was insufficient evidence to support the trial court's ruling that appellees and their predecessors in title acquired title by adverse possession, and (2) there was insufficient evidence to support the trial court's ruling that C. F. Bach inherited title to the property from J.R. English or that C. F. Bach took title to the property under an oral agreement.

It is undisputed that C. F. Bach alone was in actual possession and control of the property from the time of J. R. English's death until Bach's death in August of 1977. Appellees concede that they must "tack" their time of possession to that of C. F. Bach in order to show themselves entitled to ownership of the property by adverse possession, thus

appellees have the burden of showing that Bach held adversely to the appellants.

The general rules for establishing title by adverse possession are set out in many Arkansas cases, and are clearly set out in the case of *Utley* v. *Ruff*, 255 Ark. 824, 502 S.W. 2d 629 (1973), where the Arkansas Supreme Court stated:

> Title to land by adverse possession does not arise as a right to the one in possession; it arises as a result of statutory limitations on the rights of entry by the one out of possession. Possession alone does not ripen into ownership, but the possession must be adverse to the true owner or title holder before his title is in any way affected by the possession, and the word 'adverse' carries considerable weight. . . One of the cardinal principles of adverse possession in order that it may ripen into ownership is that the possession for seven years must have been actual, open, notorious, continuous, hostile and exclusive, and it must be accompanied with an intent to hold against the true owner.

In conclusion, the Court stated:

> As already pointed out, for Mr. Ruff to have prevailed in this case, it would have been necessary for him to have proven actual acts indicating his claim of ownership in the possession of the land involved, otherwise the true owner would never know that anyone was claiming adversely and the true owner's cause of action would not accrue until he did have actual or constructive knowledge or notice that his land was being claimed by another. . .

When J. R. English died, the appellants became co-tenants with C.F. Bach, and the mere lapse of time did not dissolve the co-tenancy. *Griffin* v. *Solomon*, 235 Ark. 909, 362 S.W. 2d 707(1962). If the successors in title to C.F. Bach, the appellees, are to show that the co-tenancy was dissolved, they must show that the possession of Bach was actual, open, notorious, continuous, hostile, and exclusive, and it must be accompanied with an intent to hold against the appellants.

They must further show that Bach's adverse claim was brought home to the appellants directly or by notorious acts of such unequivocal character that notice may be presumed.

In *Dodson* v. *Muldrew*, 239 Ark. 202, 388 S.W. 2d 90 (1965), Court refers to the rule in *Singer* v. *Naron*, 99 Ark. 446, 138 S.W. 958, an earlier case with approval.

> The reason is that possession of one tenant in common is *prima facie* the possession of all, and the sole enjoyment of rents and profits by him does not necessarily amount to a disseizin. Hence, for the possession of one tenant in common to be adverse to that of his co-tenants, knowledge of his adverse claim must be brought hime to them directly or by such acts that notice may be presumed. In order for the possession for the tenant in common to be adverse to that of his co-tenant, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed.

Between tenants in common there is also a fiduciary relationship, for they stand by operation of law in a confidential relation to each other, as to the joint property, and the duty is imposed on them to protect and secure their common interests. *Hendrix* v. *Hendrix*, 256 Ark. 289, 506 S.W. 2d 848 (1974).

The only possible testimony which might show hostile possession by C. F. Bach was his delivery of the warranty deed to his sister and niece in 1966. There is evidence that the taxes were paid from that date by Vermell Daffron and Evelyn Bernardin, but the property continued to be assessed and the taxes paid in the name of C. F. Bach. Standing alone, the delivery of the deed does not constitute substantial evidence of hostile or adverse possession on the part of C. F. Bach. After delivery of the deed Bach continued to live alone on the property as he had since the death of J. R. English; neither he nor his grantees made any improvements on the property; and the grantees did not enter into possession or exercise any other rights of ownership. More importantly, there is no evidence of acts so notoriously and unequivocally

hostile as to charge appellants with knowledge of C. F. Bach's adverse claim. They were not told that a deed had been executed, and they were under no obligation to search the record; indeed, if they had searched the tax record, they would have discovered that the taxes were assessed and paid in the name of C. F. Bach. There is evidence that Vermell Daffron acknowledged the appellants' claim when she wrote one of the appellants, Emma Barcus, after Bach's death, and told her, "My advice to you is to come on down and get a lawyer and put in for your part."

We hold that the decision of the trial court finding adverse possession in appellees is clearly against the preponderance of the evidence, and that appellees have failed to establish this claim.

We further hold that there was insufficient evidence to support the trial court's ruling that C. F. Bach inherited title to the property from J. R. English, or that Bach took title under an oral agreement. Such a ruling would allow the conversion of a tenancy in common into a joint tenancy with right of survivorship, based upon an oral agreement. We are unaware of any authority for such a conversion.

In *Williams* v. *Robinson*, 251 Ark. 1002, 476 S.W. 2d 1 (1972) the Court stated, "We have long recognized that an oral contract to make a will to devise or a deed to convey real estate is valid when the testimony to establish such contract is clear, cogent, satisfactory, and convincing." In *Crowell* v. *Parks*, 209 Ark. 803, 193 S.W. 2d 483 (1946), it was stated that the evidence must be so strong as to be substantially beyond reasonable doubt.

There is evidence that J. R. English and C. F. Bach agreed that the survivor was to take the entire estate, but there is also evidence that they agreed that the survivor would only have possession for as long as he lived. The testimony clearly falls short of the clear, cogent, satisfactory, convincing, and substantially beyond reasonable doubt test required to enforce and oral contract.

We hold that appellants and appellees are tenants in

common as to the subject property, and the case is remanded to the trial court for further proceedings consistent with this opinion, including the alternative petition of appellees.

Reversed and Remanded.

CORBIN, J., not participating.

FOGLEMAN, Special Judge, not participating.