Gloria FOLLETT, as Trustee for the Gloria Follett
Revocable Trust UDT 11/92 *v.* Joseph FITZSIMMONS
and Patricia Fitzsimmons

CA 08-275                                     286 S.W.3d 742

Court of Appeals of Arkansas
Opinion delivered September 3, 2008

*Gerald K. Crow*, for appellant.

*Susan K. Lourne*, for appellees.

JOHN MAUZY PITTMAN, Chief Judge. This case involves a dispute over a small tract of property between appellant's residence and appellees' property on which they operate a bed-and-

breakfast inn. The dispute arose in the summer of 2002, approximately six months after appellees acquired title to their property, formerly a church building, from the First Methodist Church of Eureka Springs. Appellant filed a quiet-title petition in 2004 claiming title to the disputed property based on adverse possession and acquiescence. A hearing was had and, after appellant presented her case-in-chief, the trial judge ruled that she had failed to establish a prima facie case and dismissed appellant's case. On appeal, appellant argues that the trial court erred in dismissing her claims because the evidence was in fact sufficient to present a prima facie case. We find no error, and we affirm.

When a party moves for a directed verdict in a jury trial or dismissal in a bench trial, it is the duty of the trial court to consider whether the plaintiff's evidence, given its strongest probative force, presents a prima facie case. *Stephens v. Miller,* 91 Ark. App. 253, 209 S.W.3d 452 (2005). It is not proper for the court to weigh the facts at the time the plaintiff completes his case, and the motion should be denied if it is necessary to consider the weight of the testimony before determining whether the motion should be granted. *Id.* On appeal, we determine whether dismissal should have been granted by reviewing the evidence in the light most favorable to the party against whom the dismissal was sought, giving it its highest probative value and taking into account all reasonable inferences deducible from it. *Id.*

A party claiming title to land by adverse possession must prove all of the elements thereof. The common-law elements have been succinctly set out by the Arkansas Supreme Court as follows:

> Title to land by adverse possession does not arise as a right to the one in possession; it arises as a result of statutory limitations on the rights of entry by the one out of possession. *Utley v. Ruff,* 255 Ark. 824, 502 S.W.2d 629 (1973). Possession alone does not ripen into ownership, but the possession must be adverse to the true owner or record title holder before his title is in any way affected by the possession. *Id.*; *Coulson v. Hillmer,* 271 Ark. 890, 612 S.W.2d 124 (1981). In order for a claimant to establish ownership to property by adverse possession, that party has the burden of proof to show, by a preponderance of the evidence, possession for seven years. *Potlatch Corp. v. Hannegan,* 266 Ark. 847, 586 S.W.2d 256 (1979). In addition, the possession must have been actual, open, notorious, continuous, hostile, and exclusive, and it must be accompanied with an

intent to hold against the true owner. *See Rowe v. Fisher,* 239 Ark. 721, 393 S.W.2d 767 (1965); *Boyette v. Vogelpohl,* 92 Ark. App. 436, 214 S.W.3d 874 (2005).

*Thompson v. Fischer,* 364 Ark. 380, 384, 220 S.W.3d 622, 625 (2005).

The disputed area lies directly between appellant's house and appellees' bed and breakfast, the former church. Photographs show that this is a relatively narrow, rock-strewn passageway between the two buildings, running from the front to the rear of both properties and terminating where it encounters a vertical cliff face. A drainage channel running from the front to the rear of the property lies immediately adjacent to the bed and breakfast and extends approximately sixteen inches therefrom in the direction of appellant's house. Appellant claims the entire area from the drainage channel to her own house. Several utility boxes and an air conditioning unit are mounted on the wall of the bed and breakfast.

Appellant's claim for adverse possession was based on her own use of the property and that of her predecessor in title. Appellant testified that she owned her house since 1966 and believed that she owned the entire area between the two buildings. She stated that she maintained and cleared the area of leaves and debris, placed benches on it, installed a gas lamp, and planted some flowers and shrubs on it. She admitted, however, that she had never objected when the owners of the church property entered the disputed area via her staircase to access and maintain the utility boxes on the church building.

June Westphal testified that she had been a member of the church for more than fifty years, was a church steward, and had written a history of the church in 1979-80. She testified that appellant's predecessor in title had kept the area raked and cleared. Finally, she stated that she knew of no time when the church asserted ownership to the property and that she believed the property belonged to appellant. She admitted, however, that the church building had been painted several times during this period, that the roof had been replaced, and utilities had been accessed via the disputed area. She also admitted that she did not know if the drainage ditch had ever been recognized as the boundary line, that she knew of no oral statement by any responsible person representing that the boundary between the properties was anything other than the lot line; that her duties as church steward were purely ministerial; and that it was the church trustees who were

responsible for maintaining the church properties, making sure that insurance was obtained, and overseeing all legalities relating to the property.

Mary Ellen Sheard testified that she had resided in Eureka Springs since 1977, that she knew appellant, and that she assumed that the property between the buildings belonged to appellant's predecessor in title and appellant because she observed them in the disputed area and they seemed to be taking care of all of it.

Janett Arnett testified that she was a member of the board of trustees of the church and had served in that capacity for six years. She also testified that she had served on the church's administrative council for ten years and that the board of trustees reports to the administrative council on major decisions. Finally, she stated that she had no basis whatsoever for suspecting that any adverse claim had been made against the property and that she had executed a seller's affidavit to that effect when the church property was sold to appellees.

Appellant argues on appeal that the trial judge erroneously applied the law and erred in finding that she failed to prove adverse possession of the tract. We do not agree. Although there was evidence that appellant placed benches and a lamp on the disputed property and kept it clear of debris, the fact remains that her claim was in excess of the boundary established by her deed. As such, appellant was in the position of a trespasser, and far greater trespasses than appear in the evidence are required for a trespasser's claim to ripen into title. The Arkansas Supreme Court has held that the acts of an adjacent trespasser who planted a 200-foot-long row of willow trees twenty feet over his property line, had a light pole installed on the twenty-foot strip, and used the twenty-foot strip for a trailer park for more than seven years were insufficient to show actual or pedal possession to the extent of the claimed boundary. *Coons v. Lawler*, 237 Ark. 350, 372 S.W.2d 826 (1963). In light of this precedent, the placement of a lamp and shrubs and the temporary location of benches on appellees' property was clearly insufficient. Nor was the testimony of June Westaphal or Mary Ellen Sheard sufficient to establish title by adverse possession. Both witnesses testified, in essence, that they assumed and believed that the disputed area was owned by appellant and her predecessor in title, but such an assumption based on temporary or intermittent use of neighboring property is not evidence that the owner has been charged with actual or constructive notice that his

land is being claimed by another. *Utley v. Ruff*, 255 Ark. 824, 502 S.W.2d 629 (1973). Furthermore, to ripen into title, adverse use must be exclusive, and appellant candidly admitted that she did not interfere with maintenance activities conducted by the church on its property.

Finally, appellant argues that the trial court erred in finding that she failed to establish a prima facie case of title by acquiescence. When adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence. *Clark v. Casebier*, 92 Ark. App. 472, 215 S.W.3d 684 (2005). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* Here, however, there was nothing upon which such an agreement could reasonably be implied. Clearly, the church did not recognize the drainage ditch as the boundary line, but instead continued using portions of the disputed area beyond the ditch whenever maintenance was required on that side of the building. Painting, reroofing, and access of utilities would have been a practical impossibility had the church agreed to be confined to a property line only sixteen inches away from the wall of their building. In the absence of any alleged or apparent monument in the disputed area other than the drainage ditch, the trial court did not err in ruling that appellant failed to show a prima facie case of boundary by acquiescence.

Affirmed.

GLADWIN and MARSHALL, JJ., agree.