KENNETH S. HIXSON, Judge
Appellant Brady Williamson ("appellant" or "son") appeals from the Searcy County Circuit Court's final judgment entered after a bench trial in favor of appellee *819 John J. Williamson ("appellee" or "father"). On appeal, appellant contends that (1) appellee failed to make a prima facie case during his case-in-chief; (2) the trial court impermissibly shifted the burden of proof to appellant; (3) the judgment is not supported by the weight of the evidence; (4) the trial court erred by allowing recovery for funds never included in the complaint; and (5) the trial court erred in granting appellee attorney's fees and costs. We affirm, in part, and reverse and remand, in part.
Appellee lives in Saint Joe, Arkansas. Appellant is appellee's son and lives in Oxford, Mississippi. Father was arrested for terroristic threatening and was detained in the Searcy County Law Enforcement Center. It is undisputed that father subsequently executed a durable power of attorney on September 9, 2010, to give son the right to act on his behalf during this period. Subsequently, a judgment of acquittal by reason of mental disease or defect was entered in that case on October 1, 2010, and father was committed to the Arkansas State Hospital, where he was later released in November 2010.
After his release, father alleged that son had breached his fiduciary duty under the durable power of attorney and had converted father's money and property for his personal use. Therefore, father filed his complaint on September 9, 2013, for breach of fiduciary duty and conversion. In his complaint, he sought a judgment for moving expenses in recovering some of his property; unauthorized checks that were given by son to son's wife; unauthorized disposition of his retirement benefits; unauthorized disposition of cash funds taken from his safe; unauthorized disposition of firearms, ammunition, and weapons that belonged to him; attorney's fees and costs; and punitive damages.
Son filed his answer generally denying the allegations. The events took place in late 2010, and the trial commenced almost five years later. Discovery disputes and other matters arose. A bench trial was held over an eighteen-month period on May 15, 2015, February 24, 2016, and October 9, 2016.
Deputy Lang Holland testified that when father was arrested, several firearms, accessories, and ammunition were taken into custody by the sheriff's department. Deputy Holland testified that because father refused to have his firearms sold at public auction, his son was called to retrieve the items.
Father testified and admitted that he gave his son a power of attorney. Father's home was a cabin located on fifteen acres in Saint Joe, Arkansas. Father further testified that he gave his son specific verbal instructions to store his personal belongings in "PODs"; take care of his dog; pay his bills, including home insurance; and list his home for sale for $150,000. Father testified that he had been incarcerated and detained at the hospital from May through November 2010, for a total of six months. According to father, after his release, son picked him up from the hospital but told father that father could not return to his cabin because son had rented the cabin in Saint Joe to some hunters. Father stayed with his great aunt in Mississippi and later in a trailer on her lot. Father discovered that his belongings had been moved to son's home in Oxford, Mississippi, son had changed the mailing address on his banking accounts to his personal address, son had written checks from father's accounts to son's wife, and son had retained two of his retirement checks and social security checks that totaled $11,382. Therefore, father revoked the durable power of attorney on November 17, 2010. Furthermore, father testified that he paid expenses to *820 retrieve his belongings from Mississippi from his son. Father explained that some of his property was still missing, including $900 in cash that was stored in his gun safe and his firearms.
On cross-examination, despite alleging that some of his social security checks were converted, father admitted that he did not have the bank statements from that time. However, a bank employee had provided him with pictures of some of the personal checks that son had written to son's wife. Son's counsel subsequently objected at one point to any testimony regarding the social security checks as the complaint had not specifically alleged that son had converted those moneys. Counsel explained that had there been such allegations, there would have been further discovery as to the social security checks. Father's counsel responded that it would move to "amend the pleadings to conform with the proof." The trial court ruled that it would take the objection and motion to conform with the proof under advisement "as we proceed" and allowed father to put forward any evidence and testimony he wished regarding the subject. Father testified that he had received the same amount, $1897, from the Social Security Administration every month that was directly deposited. However, father testified that after he was incarcerated, "they were given, sent, mailed to [appellant]" instead for "about seven months." Father additionally testified that the Social Security Administration told him that his checks were being sent to son and that it was not until February 2011 that his social security benefits were once again sent to him.
Regarding the condition of the cabin, father admitted that there were only plywood subfloors and that the cabin was unfinished. Father testified that "the hall and the kitchen and living room [only had] subfloor. And the stairs, well, they were bare and they put carpet on it." When asked whether he would agree that the cabin was unfinished, appellee responded, "[e]verything but the floors ... [s]ome floors."
Son testified and admitted that he had changed the mailing addresses on father's bank accounts so that they would be mailed to his own residence in Mississippi. He testified that father told him to take all of his personal effects from the basement in the cabin to his home. Son testified that he had paid the home insurance and repaired and remodeled his father's cabin as he was requested to do by his father. Son further admitted that there was $900 in cash in the safe and that after he renovated the cabin, he had rented the cabin for $200, but he stated that he did not deposit either amount in the bank. Son explained that he had the retirement checks mailed to him, but he did not believe that he contacted the Social Security Administration. Son additionally admitted that several checks were written to his wife, but son explained that the moneys were spent on the renovation and repair of father's cabin. However, son did not have any receipts to support his claim that the checks were spent on cabin-renovation expenditures because he claimed that he gave the receipts to appellee back in 2010 or early 2011. Instead, son testified that he had bank statements that contained some form of documentation. Appellee's counsel objected and requested a continuance since that documentation had not been provided in discovery. The trial court granted a continuance and instructed both parties to supplement discovery, including any further information regarding the social security checks.
Trial resumed on February 24, 2016. Father rested his case without any further testimony or evidence, and son *821 moved for a directed verdict.[1] The trial court denied the motion, and the trial continued.
Son called Andrea Val Matty as a witness. Matty testified that she operates Buffalo River Cabins. Her parents sold father the property on which his cabin was built, and she was familiar with the cabin. Matty testified that son had asked her whether she would consider cleaning the cabin when father was not there. She thought that father was either in jail or in Little Rock at the time, but she did not know. Matty testified that the cabin was "filthy" and "disgusting" at that time and that she had cleaned the cabin. More specifically, she testified that there was junk everywhere, brown paper on the windows, no flooring except the plywood subfloor, and a lack of home furnishings. Photographs were introduced that were taken after son cleaned, remodeled, and renovated the cabin. Matty testified that the photographs introduced by son accurately reflected the condition of the cabin after the renovations and remodeling.
Vincent Neil Johnson testified that he had previously done carpentry work for father. He had completed the exterior building, roof, siding, windows, doors, and the basement. However, Johnson testified that when he left, the cabin was ready for the next set of contractors to complete the plumbing, sheet rock, and flooring.
Son testified in his case-in-chief that when father was incarcerated, his relationship was good with father. Son claimed that father gifted him all of his tools and firearms. He additionally testified that father told him to pay the insurance and to prepare the cabin to either be sold or rented. Son testified that he and his wife cleaned and remodeled the cabin. According to son, they installed hardwood flooring and carpeting, painted, made curtains, installed plumbing, and added furnishings. Although he did not take any photographs of the cabin before or during the remodel, son provided several photographs depicting the finished cabin. Son testified at length regarding all of the furnishings and materials that he had purchased to complete the cabin. Although he was unable to produce the original receipts for the furnishings, he provided his handwritten list of what he purchased and the associated costs. Son testified that he had his bank statements that showed purchases at gas stations and at various stores and withdrawals from ATMs that he claimed were associated with the improvements to father's cabin. Son further testified that he had given all the original receipts to appellee in a manila envelope years earlier without keeping any copies. However, son was able to provide email documentation from eBay that stated that a memory foam mattress costing $299.99 was shipped. Another email stated that a "1911 Arkansas Color Map Missouri map on back" had been won on eBay. Son claimed that those items were purchased for the cabin.
*822 Son explained that he paid cash to get better deals on the furnishings and renovations. Therefore, he wrote several checks to his wife from father's account so that she could deposit them in their personal account to pay for items. The September 13, 2010 check written to appellant's wife for $3,572 contains a handwritten notation on the memo line that the check was for "Flooring, Beds, Bedding." The September 18, 2010 check for $5,000 states that it was for "Home Furnishings-see list." The September 30, 2010 check for $1,750 states that it was for "Carpet/Upstairs Bath install." The October 31, 2010 check for $200 does not contain any notation on the memo line. The November 2, 2010 check for $400 states that it was for "heater supplies." Finally, the November 11, 2010 check for $400 states that it was for "Finish Home Ready to Rent/Sale."
Regarding father's claim that checks were missing, son testified that he remembered giving father two checks back. However, he was not sure whether the checks were from father's social security or retirement, but he was certain that they would not have been deposited into his personal account. Son provided bank statements from his father's account that showed that there were checks deposited from the U.S. Treasury for social security into father's bank account. Those bank statements show that five separate social security check deposits were made into father's bank account during a time period spanning from May 12, 2010, to September 15, 2010. Son denied that he contacted the Social Security Administration and advised them to stop depositing or mailing father's social security checks to him as father alleged.
On cross-examination, son testified that the rent he obtained from renting the cabin was deposited into his personal account but was used toward remodeling father's cabin. He explained that father told him to take the $900 in cash that was contained in the gun safe and to use it. He additionally claimed that father was not permitted to possess any of his firearms and admitted that he took the firearms to his home in Mississippi. Regarding the retirement checks, a handwritten notation was introduced in which father had written "Entergy replaced 4 checks of 6 checks. They were sent by mail to Brady [son]. They were not directly deposited. Brady spent 2. Each Entergy retirement checks were $1197 per month."
At the close of trial, the parties agreed to submit written closing arguments and motions. In father's position statement, he reiterated the same arguments presented at trial and alleged that he was entitled to a judgment of $34,451.46 in damages and $8,751.07 in attorney's fees and costs.
Son filed a written motion for dismissal. In his motion, he argued that the durable power of attorney authorized him to act on his father's behalf and generally that he had not acted outside the scope of the power of attorney and did not self-deal with his father's property.
The trial court issued a letter opinion stating that it was finding in favor of father and that it was also awarding attorney's fees and costs but declining to award any punitive damages. The letter opinion did not state the amount of damages to be awarded. The trial court further stated,
The Court finds that under the totality of all of the circumstances and the testimony from the witnesses, the Plaintiff has established a breach of the fiduciary duty created by the power of attorney. While counsel for Defendant makes the best case possible under the circumstances, many of the facts and circumstances set out in her Memorandum Brief in Support of Motion illustrate many matters either not addressed or for which no reasonable explanation is *823 offered. Given the scrutiny given the parties' relationship under Arkansas law, the Court finds from a preponderance of the evidence that these matters are resolved in favor of the Plaintiff.
Specifically, despite the Defendant's denials of self-dealing or conversion of property, the woeful lack of even the most rudimentary "paper trail" involving different types of assets lend credence to Plaintiff's position: The manner in which Plaintiff's retirement checks were handled, with four of six being returned but two cashed with no documentation as to their disposition; no records relating to the disposition of Plaintiff's Social Security checks; while Defendant argues, correctly, that a pre-trial order prohibited Plaintiff's possession of firearms, the ultimate disposition of those items of personal property are not adequately documented or explained; and the awkward and circuitous route Defendant purportedly used Plaintiff's checking account to purchase materials to remodel the home, by writing checks to his wife, Cory, who then cashed the checks.
Finally, the trial court requested appellee's counsel to prepare a draft order to that effect for appellant's counsel to review.
Subsequently, the trial court[2] entered a final judgment in favor of appellee and made the following pertinent findings:
Following this trial, and considering the evidence, oral and documentary, the stipulations of the parties and the arguments of the attorneys, the court now finds, determines and adjudges:
3. The power of attorney gave the defendant the right to act on plaintiff's behalf and in his stead in all matters pertaining [to] his personal business. The plaintiff specifically directed Brady to pay the insurance premium on the plaintiff's home and property; list the home for sale with REMAX for one hundred fifty thousand dollars ($150,000.00), and put all of plaintiff's personal property in POD containers. Other than paying the premium for the homeowner's insurance policy, defendant did not carry out plaintiff's verbal instructions.
....
5. That defendant, standing in his fiduciary relationship as plaintiff's attorney in fact, breached that relationship by acts and conduct that did not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. That defendant's acts and actions as plaintiff's attorney in fact were contrary to the best interest of his principal.
6. That during plaintiff's detention in the Arkansas State Hospital and unknown to him, his son began writing checks on the plaintiff's checking account with First Federal Bank. That a substantial portion of these checks were not written to cover expenditures and items pertaining to plaintiff's personal business but to the contrary, they were written by him payable to and cashed by his wife, Cory Williamson. These checks are evidenced by the following:
*824 Check No. 1309, dated September 13, 2010, for the sum of $3,572.00;Check No. 1311, dated September 18, 2010, for the sum of $5,000.00;Check No. 1331, dated September 30, 2010, for the sum of $1,750.00;Check No. 1332, dated October 30, 2010, for the sum of $200.00;Check No. 1333, dated November 2, 2010, for the sum of $400.00;Check No. 1334, dated November 11, 2010, for the sum of $400
Total $11,322.00
7. That defendant caused all of the records relating to the plaintiff's checking account with First National Bank to be sent to his address ... [in Mississippi].
8. That upon his discharge, on or about the 17th day of November 2010, from the Arkansas State Hospital, plaintiff discovered that defendant had been writing checks on his checking account and making them payable to his wife. Learning this plaintiff cancelled the Durable Power of Attorney and the right of defendant[ ] to act on his behalf.
9. Plaintiff learned defendant rented his home to a group of hunters for an undisclosed amount of money and kept these rent proceeds for himself. Defendant has failed to and has yet to account for these funds.
10. While plaintiff was incarcerated in the Searcy County Law Enforcement Center and in the Arkansas State Hospital, the defendant: 1). Converted plaintiff's retirement payments from Entergy, Inc., and had them forwarded to his home in Oxford, MS. The defendant collected six (6) of these retirement checks in the separate amount of $1,178.00 each, wrongfully cashed two (2) and kept the $2,356.00 for his personal use. 2). Converted $900.00 from plaintiff's gun safe and wrongfully kept it for his personal use. 3). Wrongfully took possession of all of the plaintiff's personal property, except one bed, a gun safe, and a few cooking utensils, and moved them all to his residence in Oxford, MS. 4). Wrongfully took possession and for his personal use, $11,382.00 of plaintiff's Social Security Benefits. 6). Wrongfully took possession of plaintiff's personal property consisting of (ammunition, pistols, shotguns and long guns) having a fair market value of $7,304.50, keeping and disposing same for his personal benefit. 7). The actual recovery cost for the furniture and household appliances from defendant wrongfully took from plaintiff is $1,186.96.
11. That plaintiff is granted judgment against the defendant, Brady Williamson, in the following amounts:
a. Checks written to defendant's wife $11,322.00 b. Retirement Check proceeds 2,356.00 c. Cash from gun safe 900.00 d. Social Security benefits 11,382.00 e. Fire Arms 7,304.50 f. Costs of recovery 1,186.96 Total judgment $34,451.46
12. That in addition, plaintiff is granted judgment against the defendant for his court costs of $177.72 and his attorney fees of $8,398.95.
13. All premises considered plaintiff is granted a judgment against the defendant in the total sum costs, and attorney's fees, in the sum of $43,027.53, all for which levy, attachment, garnishment, and all other forms of collection shall attach and be available to plaintiff.
This appeal followed.
I. Motion to Dismiss
Appellant, son, first argues that appellee, father, failed to make a prima *825 facie case for either breach of fiduciary duty or conversion during his case-in-chief and that his motion to dismiss should have been granted. When a party moves for a directed verdict in a jury trial or dismissal in a bench trial, it is the duty of the trial court to consider whether the plaintiff's evidence, given its strongest probative force, presents a prima facie case. Follett v. Fitzsimmons , 103 Ark. App. 82, 286 S.W.3d 742 (2008). It is not proper for the court to weigh the facts at the time the plaintiff completes his case, and the motion should be denied if it is necessary to consider the weight of the testimony before determining whether the motion should be granted. Id. On appeal, we determine whether dismissal should have been granted by reviewing the evidence in the light most favorable to the party against whom the dismissal was sought, giving it its highest probative value and taking into account all reasonable inferences deducible from it. Id.
A person holding a power of attorney has a fiduciary duty to the principal. Stokes v. Stokes , 2016 Ark. 182, 491 S.W.3d 113. Breach of fiduciary duty involves betrayal of a trust and benefit by the dominant party at the expense of one under his influence. Cole v. Laws , 349 Ark. 177, 76 S.W.3d 878 (2002). Regardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. Id. Further, self-dealing by a fiduciary (without consent) is always a violation of the duty, even if innocent and unintentional. Agracat, Inc. v. AFS-NWA, LLC , 2012 Ark. App. 372, 2012 WL 1943334.
Conversion is a common-law tort action for the wrongful possession or disposition of another's property. Hartness v. Nuckles , 2015 Ark. 444, 475 S.W.3d 558. To establish liability for the tort of conversion, a plaintiff must prove the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights. Id. Where the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. Id.
It is undisputed that son was authorized to act on father's behalf through a durable power of attorney. However, father testified at trial that son breached his fiduciary duty when son took control of father's money, assets, and other property and converted it for his or his wife's personal use. After reviewing the evidence in the light most favorable to appellee father, father's testimony was sufficient to overcome a motion to dismiss, and we affirm on this point.
II. Burden-Shifting Argument
Appellant son next argues that the trial court impermissibly shifted the burden of proof to appellant. Son specifically argues that the trial court required him to rebut father's allegations rather than requiring father to prove that son did, in fact, breach his fiduciary duty. As support, son cites us to the trial court's letter opinion in which son alleges that the trial court's focus is on what son did not prove rather than on what father did prove.
Upon review of the letter opinion, the statements made in the letter opinion do not indicate that the trial court shifted the burden to son. At no point does the trial court state that it was son's burden to establish that he did not breach his fiduciary duty. Rather, the trial court specifically found that appellee (father) had established a breach of fiduciary duty. In so doing, the trial court found that son's lack of "even the most rudimentary 'paper trail'
*826 involving different types of assets lend[ed] credence to [appellee's] position. " (Emphasis added.) Thus, appellant's argument is without merit, and we affirm on this point.
III. Judgment Not Supported by the Weight of the Evidence Argument
The trial court specifically awarded appellee father a judgment for damages for the six checks written to son's wife, two retirement checks, cash from the gun safe, social security benefits, value of the missing firearms, and costs to recover his property from Mississippi, totaling $34,451.46. Appellant argues that the judgment is not supported by the weight of the evidence. We agree, in part.
Generally stated, our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. Bohannon v. Robinson , 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Id.
A. Firearm Award
We cannot say that the trial court clearly erred in finding that appellant son breached his fiduciary duty when he took and converted father's firearms for his personal benefit. Father testified that he did not gift his property to son. Although son contradicted father's testimony and stated that father had gifted him the firearms, the trial court was permitted to resolve the conflicting testimony and determine the credibility of the witnesses. Therefore, we must affirm the trial court's award of the value of the missing firearms and affirm that portion of the judgment in the amount of $7,304.50.
B. All Other Awards
We cannot say the same for the remainder of the trial court's judgment. Appellee father gave appellant son a broad durable power of attorney that allowed him to act on father's behalf. This power allowed son to act for father's benefit. It was undisputed that son exercised his power while father was confined. However, the trial court concluded that appellant breached his fiduciary duty by failing to "meet the requisite standards of fair dealing, good faith, honest, and loyalty" and that he "converted" some of appellee's money and property. Based on these findings, the trial court awarded $11,322 for the checks written to appellant's wife, $2,356 for the retirement-check proceeds, $900 for the cash from the gun safe, $11,382 for the social security benefits, and $1,186.96 for the costs of recovering property from appellant's home. However, the crux of father's case is that son was self-dealing with father's property. Even if son did exercise control over some of father's assets, it is clear from the record, especially from the photographs and testimony of independent witnesses, that father benefited significantly from son's conduct. The cabin was in a condition of disrepair, and son used the power of attorney to clean, renovate, and remodel father's cabin. The trial court did not take these increases in value to the cabin into consideration when it awarded the judgment to the father herein. Because we are left with a definite and firm conviction that a mistake was made and because the remaining awards are interrelated, we must reverse and remand.
The following are just two examples of errors that permeate the trial court's judgment that require reversal. First, even if *827 we were to credit father's testimony, father did not dispute that the floors of the cabin were unfinished and that son had finished out the cabin. Son testified that he used father's funds to finish the cabin and provided some documentation to support his contention. While the trial court was not required to fully accept and credit son's testimony that he spent all the funds to improve father's cabin, we cannot conclude, as the trial court apparently did, that son spent none of the funds to improve the cabin with the evidence presented at trial. Pictures of a beautiful, fully finished and furnished cabin were introduced at trial, and father admitted that the cabin had been unfinished before his confinement. Thus, at the very least, some of father's disputed funds must have been expended for that purpose and did not constitute self-dealing or conversion as appellee alleged.
As a second example, it is undisputed that father received $1,897 per month in social security benefits. Father testified that he failed to receive seven months of social security benefits after son directed the Social Security Administration to disburse father's benefits to son instead. Son disputed that allegation, and the trial court was permitted to credit father over son. That said, son produced bank statements from father's account at trial that showed that social security checks were deposited into father's account through September 2010. The trial court awarded father a total of six months of benefits; however, even crediting father's testimony, there are, at best, only four months of social security benefits remaining in dispute because father testified that he began receiving his benefits again in February 2011.
Given these two examples alone, we must reverse and remand the trial court's judgment as clearly erroneous with the exception of the trial court's award for the value of the firearms. On remand, the trial court must redetermine, consistent with this opinion, whether appellee father sustained his burden of showing what portion, if any, of the disputed funds were specifically attributable to a breach of fiduciary duty for self-dealing or converted by appellant inconsistent with appellee's rights.
IV. Amending the Complaint
Appellant son additionally argues that the trial court erred by allowing recovery for social security benefits that were never included or alleged in appellee's complaint and that any award must be in error of law. Appellant correctly states that appellee did not seek recovery for any missing social security benefits in his complaint. However, we will not reverse a trial court's decision regarding the amendment of pleadings to conform to the evidence in the absence of a manifest abuse of discretion. Cross v. Cross , 2016 Ark. App. 327, 497 S.W.3d 712. Arkansas Rule of Civil Procedure 15(b) governs the amendment of pleadings to conform to the evidence:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.
Ark. R. Civ. P. 15(b).
Beginning with his opening statement, appellee father stated that he *828 was seeking the recovery of missing social security benefits. Appellee further testified regarding that allegation in his case-in-chief. Appellant son later objected, and appellee moved to amend to conform to the proof. However, even when an objection is made that the issue was not included in the pleadings, the circuit court may allow an amendment at its discretion. Hope v. Hope , 333 Ark. 324, 969 S.W.2d 633 (1998). Here, the trial court took the matter under advisement, and a continuance was later granted, in which the trial court explicitly instructed that "either party can go back and find out what happened with those Social Security checks." When trial resumed, the parties presented further evidence regarding social security benefits and no further objections were made. Furthermore, the trial court ultimately awarded appellee a judgment for social security benefits, which we reverse and remand for the reasons set out above.
Appellant notes on appeal that the trial court did not specifically grant appellee's motion to amend the pleadings to conform to the evidence. Although the court did not expressly say that it was granting the motion, it is clear that it did so. In Cross , a complaint was treated as amended, despite the lack of a ruling on a motion to amend to conform to the proof, where discussion between the trial court and counsel and the result of the case indicated that the amendment had occurred. See Cross, supra. That is what happened in the present case-the trial court granted the motion after a continuance was granted without expressly stating so, and appellant fails to show that the trial court manifestly abused its discretion on appeal. Thus, we affirm on this point.
V. Attorney's Fees
Lastly, appellant argues that the trial court erred in granting appellee attorney's fees. Because we reverse and remand the judgment in this case for the trial court to make further findings consistent with this opinion, we also reverse and remand the issue of attorney's fees and costs.
Affirmed in part; reversed and remanded in part.
Klappenbach and Glover, JJ., agree.

Because this case involved a bench trial, appellant's motion was properly a motion to dismiss, not a motion for directed verdict. Arkansas Rule of Civil Procedure 50(a) (2017) provides that "[i]n nonjury cases a party may challenge the sufficiency of the evidence at the conclusion of the opponent's evidence by moving either orally or in writing to dismiss the opposing party's claim for relief." Nonetheless, the trial court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for a directed verdict. The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." Woodall v. Chuck Dory Auto Sales, Inc. , 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the nonmoving party has made a prima facie case on its claim or counter-claim, then the issue must be resolved by the finder of fact. Swink v. Giffin , 333 Ark. 400, 402, 970 S.W.2d 207, 208 (1998).

The judge who presided over the trial left office on December 31, and a new appointed judge signed the order and judgment.