RHONDA K. WOOD, Associate Justice This appeal arises from a dispute involving the restoration of a 1968 Pontiac Firebird. The car owner sued' the body shop that did the repairs for, among other things, breach of express warranty, breach of implied warranty, money had and received, and conversion. The circuit court' ruled that the breach of warranty claims failed for lack of notice and ruled that the other claims failed for lack of proof. We affirm the circuit court’s judgment. Facts and Procedural History Ashley Hartness Wanted to restore his 1968 .Pontiac Firebird. He found a body shop to do the work: Restoration Plus, which was owned by Rick Nuckles: Hartness and Nuckles entered into an oral arrangement. Nuckles agreed to give the car a new paint job, perform body work, and install a new electrical system. Hartness would purchase and provide the new parts as needed, while Nuckles and his employees would provide ■ the services. Hartness claimed that Nuckles promised to do “Barrett-Jackson” or show-car Equality work. At trial, Nuckles adamántly denied having made any such representation. Even so, it is undisputed that the car entered the Restoration Plus body shop in May 2007. Over the course of the next two and a half years, Nuckles submitted over nineteen invoices to Hartness, which he paid in cash. Hartness also took the car for a number of test drives and gave Nuckles feedback on the progress and quality of the work. Hartness picked up his car in December 2009, believing the restoration was complete. He returned the car on one more occasion to Nuckles for further repairs. After these final repairs, Hartness picked up and kept the vehicle. Despite deep dissatisfaction with the restoration, he did not notify Nuckles of any further concerns with the . quality of the work until filing a lawsuit against him in September 2012. Hartness alleged a number of causes of action in his complaint: breach of express warranty, breach of implied warranty, money had and received, conversion, fraud, deceit, and false representation. A bench trial was held. Hartness introduced pictures of his car that he claimed were taken shortly after the car left the body shop. A number of defects were apparent from the pictures, including chipped paint, misaligned doors, and overall shoddy workmanship. Nuckles testified, however, that there was no way the car looked as represented in the pictures when it left the body shop. The circuit court did not resolve the factual dispute regarding the existence of an express or implied warranty. Instead, the court' found that Hartness- failed to comply with the notice requirement of the Uniform Commercial Code (UCC), which requires a party suing on -a'warranty to notify the breaching party before -filing suit. Ark. Code Ann. § 4-2-607(3)(a) (Repl. 2001). The'court also rejected the remaining claims. Hartness appeals, |aarguing that the UCC-notice requirement applies only to warranties for goods; because his warranty was for services, the notice requirement shouldn’t apply. Hartness also argues that the court should have awarded him damages on his money-had- and-received and conversion claims. We accepted certification from our court of appeals because the issue regarding, notice is one of first impressioij. Ark. Sup. Ct. R. 1-2(b)(1) (2015). , Express and Implied-Warranties We first address whether giving notice is a prerequisite to filing a breach-of-warranty lawsuit in non-UCC cases, As an initial matter, this court has never explicitly ruled whether express and implied warranties apply in a contract for services. It’s true that our commercial code includes express and implied warranties for the sale of goods.[1] Rut outside the new-home construction context, we have never extended implied warranties to contracts that are exclusively for services.[2] We have recognized an express warranty in a services case, but in that particular case, such a warranty was specifically authorized by statute.[3] The circuit court never ruled whether express and implied warranties applied to a contract to restore an automobile. The court overlooked this preliminary issue and instead addressed whether the notice requirement was satisfied." Since the court did not directly rule Lon the existence of the warranties, nor was it addressed on appeal, the issue is not before us. See Gwin v. Daniels, 357 Ark. 623, 184 S.W.3d 28 (2004) Furthermore, this is a court of appellate jurisdiction, and we do not decide issues not directly or indirectly presented in or decided by the trial court. Id. In any event, it would be premature for this court to decide whether express and implied warranties attach as a matter of law in a contract for ' services; The parties never briefed the issue, whicK has far-reaching implications. Commentators and other jurisdictions are split on whether warranties should apply when the contract is for services rather than goods.[4] Thus,, our discussion below is limited to whether there is a notice requirement if such warranties exist.[5] Hartness’s argument regarding notice has two components. First, he argues that UCC notice was not required when the contract was for services. Second, he argues that even if , notice was required, his notice was sufficient. The first issue is one of law, which we review de novo. Hobbs v. Jones, 2012 Ark. 293, 412 S.W.3d 844. The second issue is one of fact, which we review for clear error. Ark. R. Civ. P. 52(a). Again, taking no position on | ¿whether breach of warranty claims should even exist for a contract that is exclusively for services, we hold that if such warranties do exist, the UCC notice requirements apply. Under Arkansas’s Uniform Commercial Code, a buyer of goods “must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.” Ark.Code Ann. § 4-2-607(3)(a). “[T]he giving of reasonable notice is a condition precedent- to recovery under the provisions of the commercial code and ... the giving of notice must be alleged in the complaint in order to state a cause of action.” Williams v. Mozark Fire Extinguisher Co., 318 Ark. 792, 797, 888 S.W.2d 303, 305 (1994). One purpose of the notice requirement is to give the seller an opportunity to reduce his damages by curing thé defect. Id. Whether notice under this subsection is sufficient and given in a reasonable amount of time is generally a question of fact. 18 Richard A. Lord, Williston on Contracts § 52:44, 251 (4th ed. 2001); see also AMI — Civil 2507 (2015) (including as an element óf a breach of warranty cause of action whether notice was given in a reasonable time). This court has often looked to the UCC for guidance on contract principles by analogy. See Graham Const. Co. v. Earl, 362 Ark. 220, 208 S.W.3d 106 (2005). There, we held that an express warranty in a contract for services (namely, construction of a home) takes precedence over implied warranties oh the samé subject. In reaching this conclusion, we looked to the UCC, stating that “[ajlthough the statute is inapplicable to the present cáse because [the statute]. involves' the sale of goods ... the principle should nevertheless apply.” Id. at 229, 208 S.W.3d at 111. We did the same thing in Haase v. Starnes, noting that the UCC “provides guidance on contract principles by analogy.” 323 Ark. 263, 272, 915 S.W.2d 675, 680 (1996). Our court of appeals also has relied on the UCC to impose a notice requirement in breach-of-warranty cases involving the construction of a new home. See Cinnamon Valley Resort v. EMAC Enters., Inc., 89 Ark. App. 236, 202 S.W.3d 1 (2005). Therefore, we hold that if an express warranty or an implied warranty is created in a contract for services, the UCC notice requirement from Ark. Code Ann. § 4-2-607 applies. That is, before filing a lawsuit, a person alleging breach of warranty must give the[1] breaching party reasonable notice or be' barred from any remedy. This holding vindicates the purpose of the notice requirement, which is to allow the opposing party ’an opportunity to reduce his damages by curing the defect. It is also in accord with our state’s well-established practice of reasoning to the UCC by analogy in contracts for services. Turning to the facts of this case, we hold that the circuit court’s ruling that Hartness failed to give notice of the breach was not clearly erroneous. The testimony at. trial indicated that the -first notice Nuckles received about his alleged breach of a warranty was in the complaint, which was filed thirty-three months after Hartness picked up the vehicle from the body shop and after he had driven the car for almost 1000 miles. This was an unreasonable amount of time. See Mozark Fire, 318 Ark. at 797, 888 S.W.2d at 306 (holding that a second amended complaint, in itself, was insufficient statutory notice for a breach-of-implied warranty claim). Reasonable notice by Hartness would have informed Nuckles exactly how the vehicle failed to live up to Hartness’s expectations. Notice also would have given Nuckles an opportunity to cure any defects and would have allowed him to mitigate any damages. It. also would have given both parties an opportunity to document the 17condition of the car once the restoration was complete. We therefore affirm the circuit court’s ruling that Hartness’s claims for breach of warranty failed for lack of notice.[6] Money Had and Received (Unjust Enrichment) Hartness’s next argument is that the court shoüld have granted him relief on his claim for money had and received. An action for money had and received provided the foundation for the doctrine of unjust- enrichment, see Frigillana v. Frigillana, 266 Ark. 296, 307, 584 S.W.2d 30, 35 (1979), and the two actions are essentially the same. See First Nat’l Bank of Dewitt v. Cruthis, 360 Ark. 528, 203 S.W.3d 88 (2005); Campbell v. Asbury Auto., Inc., 2011 Ark. 157, 381 S.W.3d 21, 36 (defining an action based on unjust enrichment identically to one for money had and received). Under the principle of unjust enrichment, a “person should not be permitted unjustly to enrich himself at the expense' of another, but should be required to make restitution of or for, property or benefits received, retained, or appropriated.” Servewell Plumbing, LLC v. Summit Contractors, Inc., 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005). Here, the circuit court denied Hartness’s claim for unjust enrichment be cause he presented no evidence regarding his “damages,” ruling that any award would require speculation. Hartness argues on " appeal that this ruling was made in error, highlighting multiple pieces of evidence from trial that support his claim for “damages.” For example, Hartness argues that he submitted evidence regarding the amount it would cost to repair the | «vehicle to its bargained-for condition. In short, Hartness argues that he was entitled to recover based on unjust enrichment because he proved expectation damages. However, a party is not entitled to expectation damages for unjust enrichment; instead, he is-entitled to restitution. “[SJometimes courts use the term damages when they mean restitution ... [b]ut ... the damages remedy and the restitution remedies are always conceptually distinct.” 1 Dan B. Dobbs, Law of Remedies: Damages-Equity-Restitution § 4.2(3), 581 (2d ed. 1993). “To measure damages, the courts look at the plaintiffs loss or injury; to measure restitution, the courts look at the defendant’s gain or benefit.” Id. A claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched. See Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd., 330 Ark. 675, 956 S.W.2d 187 (1997). The claimant’s burden is to “produce evidence permitting at least a reasonable approximation of the amount of the wrongful gain.” Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011). “If the claimant’s evidence will not yield even a reasonable approximation, the claim of unjust enrichment is merely speculative, and disgorgement will not be allowed ... [and] the claimant’s burden of proof, so described, is ordinarily met as soon as the claimant presents a coherent theory of recovery in unjust enrichment.” Id. at § 51 cmt. i; accord El Paso Prod. Co. v. Blanchard, 371 Ark. 634, 647, 269 S.W.3d 362, 373-74 (2007) (reversing award of restitution for unjust enrichment because award was speculative). At trial, Hartness failed to present evidence of a reasonable approximation of Nuckles’s wrongful gain. Instead, he focused on the how much it would cost to repair his vehicle to its bargained-for condition. This is not a theory for recovery in unjust enrichment, |3and there was no competent evidence about what gains Nuckles received from the transaction that were unjustified.[7] Because there was no evidence regarding the amount of Nuck-les’s wrongful gain, we affirm the circuit court’s ruling that Hartness could not recover for unjust enrichment. Conversion The final issue is conversion. Hartness argues that the circuit court should have granted him. relief on this claim because. Nuckles kept the old parts from the car and never returned them. The court denied this claim because,-, it found, the old parts had been damaged and were generally worthless. The. court ruled that Nuckles simply discarded the old parts near the shop, because he did not see any further use for them. Cónvérsion is ' a common-law tort action for the wrongful possession or disposition of another’s property. McQuillan v, Mercedes-Benz Credit Corp., 331 Ark. 242, 961 S.W.2d 729 (1998). To establish liability for the toft of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner’s rights. Id. Where the defendant exercises control .over .the goods in exclusion or defiance of the owner’s rights, it is a conversion, whether it is for defendant’s own use or another’s use. Id. | mThis was a bench trial, so the standard of review on appeal is- whether .the circuit court’s findings were clearly .erroneous or clearly against the preponderance of the evidence. Cochran v. Bentley, 369 Ark. 159, 251 S.W.3d 253 (2007); Ark. R. Civ. P. 52(a). We view the evidence in the light most favorable to, the appellee, resolving all inferences in. favor of the appellee. McQuillan, supra. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder, Cochran, supra. On appeal, Hartness argues that the “greater weight of the evidence demonstrates Nuckles either lost or destroyed parts belonging to Hartness, which resulted in specific damages.” This argument contradicts the testimony of one of Nuck-les’s employees, who testified that the old parts were labelled and damaged parts were discarded outside the body shop. In essence, Hartness argues that we should reweigh the evidence in his favor. But this is something we cannot do. We weigh the evidence in favor of the verdict and leave questions regarding credibility with the fact-finder. Applying these standards, we hold the circuit court’s findings were not clearly erroneous. We affirm on this point. . Affirmed. Baker and Goodson, JJ., concur. Hart, J.y dissents. . Ark. Code Ann. § 4-2-313 (express warranties); Ark. Code Ann. § 4-2-314 (implied warranty of merchantability); Ark. Code Ann. § 4-2-315 (implied warranty of fitness for a particular purpose). . See, e.g., Wawak v. Stewart, 247 Ark. 1093, 1100, 449 S.W.2d 922, 926 (1970) (holding that "an implied warranty may be recognized in the sale of a new house by a sellér who was also the builder”). . See Haase v. Starnes, 323 Ark. 263, 915 S.W.2d 675 (1996). . 18 Richard A. Lord, Willison on Contracts § 52:45, 258-59' (4tiued. 2001:) ("There is'a, division of opinion whether the express warranty concepts in the Code are also applicable or may be extended to'service agreements.”). Compare Pepsi Cola Bottling Co. of Anchorage v. Superior Burner Service Co., 427 P.2d 833 (Alaska 1967) (holding that a claim for breach of an implied warranty did not lie in a contract for personal services) with Ellen Taylor, Applicability of Strict Liability Warranty Theories to Service Transactions, 47 S.C. L.Rev, 231 (Winter 1996) (arguing that implied warranties should attach in a contract for services). . Contrary to the dissent's point of view, this opinion is not advisory. Because the circuit court’s only ruling on the breach of warranty claims was that the claims failed for lack of notice, our jurisdiction is limited to this issue. Further, the answer to this question is neither moot nor academic because our decision will have a practical effect on the parties’ legal rights: whether notice is required will control Hartness’s ability to Sue Nuckles for breach of warranty. . Hartness also argues that the issue of notice was tried by consent. However, the record reflects that Nuckles raised lack of notice in his motion to dismiss, his motion for a directed .verdict, and in-his posttrial brief. - . Hartness did present invoices from Restoration Plus that, according to him. constituted evidence of overcharging. But the circuit court obviously did not believe that any of these charges were wrongful or amounted to an unjustified gain for Nuckles. In any event. Hartness argues that his damages for unjust enrichment should be the amount it would take to repair his car; there is no argument that Nuckles should be stripped of his wrongful gain, which is the proper measure of unjust enrichment. . Perhaps the majority believes that causes of action that sound in contract are the, same as causes of action that sound in tort, It is the practice of this court to selectively recognize common law torts. See, e.g., M.B.M. Co. v. Counce, 268 Ark. 269, 596 S.W.2d 681 (1980) (recognizing tile tort of outrage or intentional infliction of emotional distress); see also Goff v. Harold Ives Trucking Co., 342 Ark. 143, 27 S.W.3d 387 (2000) (refusing-to recognize the tort of spoliation of evidence).