ROBERT J. GLADWIN, Judge
Appellants, George Prange, as vice president and trust officer of Bank of the Ozarks and guardian of the estate of Khyree Martin, a minor, and the estate of Khyree Martin (collectively, the Estate) appeal the March 28, 2018 order of the Pulaski County Circuit Court awarding full reimbursement of the Medicaid lien in the sum of $ 260,209.99 in favor of appellee Arkansas Department of Human Services (DHS). The Estate argues that the circuit court erred in its determination of what portion of a tort settlement for the injured minor should be available to satisfy DHS's lien for past medical expenses consistent with the holdings in Arkansas Department of Health & Human Services v. Ahlborn , 547 U.S. 68, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), and Wos v. E.M.A. ex rel. Johnson , 568 U.S. 627, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013), and pursuant to Arkansas Code Annotated section 20-77-315(a) and (b) (Repl. 2014). We affirm.
I. Facts and Procedural History
It is undisputed that Khyree was profoundly brain injured at birth. Through his mother, he sued the doctor and the hospital for negligently causing his injuries and reached separate compromised settlements with both the doctor and the hospital totaling $ 4,450,000.[1]
DHS sought to enforce the full amount of an undisputed $ 260,209.99 lien[2] for past medical expenses that it had paid on Khyree's behalf against the proceeds of the settlement, but the Estate sought to have the lien reduced proportionally to be consistent with the percentage the settlement represented Khyree's alleged total damages. The Estate requested that the circuit court allocate or apportion the settlement funds and hear evidence and argument regarding both parties' positions, which DHS opposed.
A hearing was held by the circuit court during which testimony was taken and documents were introduced setting forth what the Estate considered to be Khyree's *695 full damages. The evidence indicated that Khyree is profoundly brain damaged and suffers from a form of cerebral palsy. He is unable to walk, talk, or see, and he is fed through a feeding tube. Khyree is unable to tend to any of his own needs and likely will require twenty-four-hour-a-day care for the rest of his life. The Estate introduced what it claims is the minimum cost to provide future care for Khyree, reduced to present value, of $ 25,382,130.72.[3] Evidence was also introduced as to the Estate's estimate for the minimum loss of capacity to work and of fringe benefits to Khyree, reduced to a present value, of $ 795,753.52. The Estate submitted that a reasonable jury verdict in favor of Khyree for other damages including pain and suffering and mental anguish is $ 6,000,000. Evidence was also submitted that Medicaid, through DHS, paid $ 260,209.99 for past medical expenses for Khyree and that the amount of that undisputed lien would have been presented as evidence of past medical expenses if the case had proceeded to trial. Accordingly, the Estate submitted that the total damages suffered by Khyree are, at minimum and reduced to present value where appropriate, $ 32,438,094.23; but there was no stipulation by the parties with respect to that amount or evidence as to an allocation of the $ 4,450,000 settlement.
The Estate noted that it settled the case for roughly 13 percent of its estimated value of the total damages in order to avoid the risk of (1) a defense verdict or a verdict lower than the estimated damages and (2) the larger portion of fault potentially being allocated to the physician who was sued[4] rather than the hospital. The Estate asked DHS to compromise by reducing its lien to the same percentage, and when it would not, the Estate asked the circuit court to direct DHS to do so.
The circuit court denied the Estate's request and enforced DHS's lien in full in its order filed on March 28, 2018. According to the circuit court, the value of the Estate's cause of action is $ 4,450,000, the amount the Estate chose to settle the case for, rather than the $ 32,428,094.23 that the Estate speculated are the actual damages suffered by Khyree and the likely jury verdict had Khyree prevailed at trial. The potential value of the case as explained by the Estate was deemed "not reliable" by the circuit court and was not accepted. The circuit court found that the Estate had failed to meet its "burden of showing the amounts recovered by way of settlement were for damages other than the medical care already received by Khyree." The Estate filed a timely notice of appeal on April 4, 2018.
II. Standard of Review
The parties have acknowledged that the Ahlborn and Wos cases allow, but do not require, a ratio-based determination of the lien amount to be paid as reimbursement to Medicaid. Accordingly, we hold that the issue before us-whether the circuit court's factual findings of the ultimate value of the case and how much to reimburse Medicaid for past medical expenses-is a question of fact subject to clear-error review. See Hartness v. Nuckles , 2015 Ark. 444, at 4, 475 S.W.3d 558, 562 (citing Ark. R. Civ. P. (52)(a) ). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Middleton v. Ark. Dep't of Human Servs. , 2019 Ark. App. 97, 572 S.W.3d 410. Disputed facts *696 and determinations of credibility of witnesses are within the province of the fact-finder. Doran v. Ark. Dep't of Human Servs. , 2014 Ark. App. 505, 442 S.W.3d 868.
III. Discussion
Victims of wrongdoing by others often incur medical expenses that are paid by Medicaid. When a victim receives payment from the wrongdoer through a civil lawsuit-or through payment obtained without filing a lawsuit-the agreement between the State of Arkansas and the federal government requires that DHS, as the state agency in charge of Medicaid, seek reimbursement for the medical expenses paid on behalf of the victim from the proceeds of the recovery from the wrongdoer. See Ahlborn , 547 U.S. at 275-77, 126 S.Ct. 1752 (citing 42 U.S.C. §§ 1396a(a)(25)(A), (H), 1396k(a) ).
Victims often incur damages other than past medical expenses paid by Medicaid that include lost wages, future medical treatment, pain and suffering, and lost future earning capacity. See AMI-Civil 2206, 2204, 2208, 2207. Settlements do not always allocate the proceeds among those various elements of damages; rather, the wrongdoer often pays a lump sum to the victim. The United States Supreme Court, through Ahlborn and Wos , has held that DHS may not recover its past medical payments from the portion of the settlement that compensates the victim for these other damages. See also Ark. Code Ann. § 20-77-315(a) - (b). The question before us is how to ascertain the amount that constitutes the award for past medical expenses contained within a lump-sum settlement that did not designate the amounts allocated to the various elements of damages.
Ahlborn does provide that parties may agree to a proportional allocation, but it neither requires nor recommends that they do so. The facts in Ahlborn are distinguishable in that there was no question presented regarding any particular allocation method. Unlike the case before us, the Ahlborn parties, rather than the court, determined by stipulation the proportional-allocation method used to compute repayment to DHS on the facts of that case. The parties also stipulated as to the total value of damages, compared that amount to the gross settlement, and agreed to reduce damages across the board by the same percentage, as though Ms. Ahlborn had prevailed on her legal argument.
For purposes of this appeal, the relevant part of the Ahlborn holding is that, to the extent Arkansas's laws allowed assignment of the nonmedical portion of a recipient's settlement for repayment of past medical expenses, those laws allowed a lien on the recipient's "property" and therefore violated U.S.C. § 1396p(a). See Ahlborn , 547 U.S. at 272, 274-75, 284-85, 126 S.Ct. 1752. The only restriction that the Ahlborn Court placed on DHS's repayment is that DHS cannot infringe on the nonmedical damages portion of a recipient's settlement, and the Ahlborn court recognized that each state remains free to determine its own method of allocation in tort cases. See Ahlborn , 547 U.S. at 288 n.18, 126 S.Ct. 1752.
Nor does Ahlborn require an automatic reduction-or any reduction-in the amount of Medicaid's claim. If the part of the settlement that a court allocates for medical expenses is sufficient to pay DHS's claim in full, then DHS is entitled to full repayment of its claim. See Ark. Code Ann. § 20-77-315(a) - (b). Accordingly, we hold that the circuit court did not err when it found that Ahlborn does not require it to make a ratio-based determination of the lien amount to be reimbursed to DHS.
*697 The Estate next argues that in order to determine the portion of a settlement representing past medical expenses from which DHS may recover requires isolating the portion of an award or settlement attributable to each element of damages. See Wos , supra. In Wos , under factual circumstances similar to this case, North Carolina's equivalent of DHS, the North Carolina Department of Health and Human Services (DHHS), paid $ 1.9 million in medical care on behalf of the victim. The victim's parents sued the doctor and the hospital and eventually settled the suit for $ 2.8 million. DHHS attempted to collect the $ 1.9 million in past medical expenditures under a post- Ahlborn state statute that created an irrebuttable presumption that past medical expenses represented up to one-third of any recovery from a wrongdoer.
The Wos court held that the statute violated both the federal anti-lien statutes and the principle in Ahlborn that states may recover only their medical expenses paid from that portion of the settlement. The Wos Court held that the defect in North Carolina's statute was that "it sets forth no process for determining what portion of a beneficiary's tort recovery is attributable to medical expenses. Instead, North Carolina has picked an arbitrary number-one-third-and by statutory command labeled that portion of a beneficiary's tort recovery as representing payment for medical care." Wos , 568 U.S. at 636, 133 S.Ct. 1391.
The Court then analyzed that an allocation may be made either through a stipulated proportional allocation between parties like in Ahlborn or an allocation by a judge or a jury following a trial on the merits, after which the lienholder may collect only from the portion of the settlement or award allocated to past medical expenses. See id. , 568 U.S. at 638, 133 S.Ct. 1391. The difficulty comes when the settlement is not subject to a stipulation and does not otherwise allocate the recovery to the various elements of damages.
The issue in Wos -the validity of the North Carolina law that imposed an irrebuttable presumption that permitted the State to recover the greater of the full amount of its claim or one-third of the settlement-is distinguishable from both Ahlborn and this case. See Wos, supra. Because North Carolina's law provided no means for a Medicaid recipient to rebut the one-third presumption, the Wos Court struck down the North Carolina law. See Wos, supra. Although Wos did speak generally to the requirement of a hearing when the parties cannot agree on allocation, it did not impose a specific method for determining the reimbursement owed to Medicaid. See id. at 634, 133 S.Ct. 1391. Because the Arkansas laws governing DHS's recovery from third-party settlements impose no such presumption of any type, the application of Wos is limited.
We note that an Arkansas federal court has recently applied the Ahlborn and Wos approach of conducting a hearing and proportionally allocating damages. See Ricks v. Ark. Dep't. of Human Servs. , No. 4:17CV00026 (PSH) 2018 U.S. Dist. LEXIS 97526 (E.D. Ark. June 11, 2018). In that case, the victim suffered a severe brain injury at birth for which DHS paid $ 115,845.62 through Medicaid for medical expenses. The victim's parents sued the healthcare providers and settled the case for $ 1,000,000. DHS sought to recover its entire past payments from the settlement. Similar to this case, the parents and the trustee of the victim's estate sued DHS in federal court seeking a proportional reduction in DHS's recovery.
A hearing was conducted at which evidence was received regarding the extent of the victim's injuries and the monetary *698 damages caused by these injuries. Id. at 8-9. The victim's future needs were projected in a life-care plan and reduced to a present value of $ 8,357,873.73 over the victim's life. Lost earning capacity and lost benefits were valued at $ 1,060,748.53, and pain and suffering and mental anguish were valued at $ 3,000,000. An attorney experienced in medical-negligence cases explained that the case was reasonably settled for $ 1,000,000 even with these much higher damages calculations for various reasons.
The Ricks court was tasked with determining the amount of the unallocated settlement from which DHS could seek reimbursement because the parties had not stipulated to the portion of the settlement representing past medical expenses. Id. at 15 (citing Wos , supra ; Reyes v. Hickenlooper , 84 F.Supp.3d 1204 (D. Colo. 2015) ). The Ricks court then utilized the Ahlborn proportional-allocation-model approach and applied it, explaining that the plaintiffs presented expert testimony on the issue of the reasonable value of the case, assuming a win for the plaintiffs.
The Estate argues that this is the correct approach to identifying the portion of the unallocated settlement in this case from which DHS may recover past medical payments. The Estate argues that a judicial hearing should first identify the full extent of damages, the reasons the case was settled for less than that amount, and the allocation of the settlement funds among the various elements of damages. Further, all elements of damages then should be reduced in the same proportion that the settlement falls short of the total estimated damages, including DHS's recovery being limited to the same extent that the plaintiff's overall recovery is reduced.
The Estate claims that Ahlborn , Wos , Ricks , and Arkansas Code Annotated section 20-77-315(a) - (b) require that the circuit court preside over a hearing at which DHS's reimbursement for past medical payments is litigated to identify what portion of an unallocated settlement is for past medical payments because DHS's recovery is limited to that portion of the settlement that compensates for past medical expenses. The Estate claims that the circuit court failed to do so; instead, it merely decided that the value of the case was the settlement amount because that is what the Estate accepted. The Estate further submits that pursuant to Wos , 568 U.S. at 639, 133 S.Ct. 1391, the circuit court was required to account for the reasonable value of the entirety of Khyree's injury when allocating the settlement funds, rather than simply deciding that the "value" of the case was the settlement amount received. The Estate also claims that the circuit court was required to analyze the settlement in light of "litigation realities" rather than ignoring its explanation that the likelihood a jury would allocate substantial fault to the doctor who had only $ 1 million in coverage justified a lesser settlement. The Estate alleges that the circuit court ignored its explanation that obtaining a plaintiff's verdict at all was highly risky. Finally, the Estate claims that the circuit court was required to allocate the settlement funds proportionally consistent with the percentage the settlement represents total damages pursuant to Ahlborn and Wos .
We disagree and hold that the circuit court did not clearly err by rejecting the Estate's proposed valuation of the damages, in determining that the value of the case is $ 4,450,000, and by awarding DHS $ 260,209.99 for payment of past medical expenses.
Unlike Ahlborn , there was no stipulation of the value of Khyree's claim; however, the parties did stipulate that DHS's *699 lien was $ 260,209.99. Based on the evidence presented during the bench trial, the circuit court rejected the Estate's proposed valuation of the case and found the expert testimony that the case was worth $ 32,438,094.23 not credible and unreliable. The Estate's counsel acknowledged that he settled this case for the above-mentioned sum because this case had "risks," and DHS acknowledges that there are inherent risks in any trial. The circuit court noted that the "[Estate] could have gone to trial and received nothing, or $ 32,000,000 or $ 4,450,000, or any number one could conceive. [The Estate's] counsel did what experienced, skilled trial attorneys do: they evaluated their case and came to the conclusion it was worth $ 4,450,000."
Moreover, the medical bills paid by Medicaid were used to determine the value of the Estate's case. As the circuit court noted in its ruling, "[The Estate] settled the claim knowing of this Medicaid lien and the amount of the lien. [The Estate] obtained settlement utilizing the monies paid by Medicaid as a factor in determining the worth of [the Estate's] case." Furthermore, the record reflects that there was a combined total of $ 11,000,000 in insurance-policy limits available. The circuit court's factual findings that the Estate's valuation of the case as $ 32,438,094.23 was not credible and that the actual value of the case is $ 4,450,000 are not reversible error.
The Estate's valuation is predicated on its subjective valuation of damages that might have been awarded. This would require the court to assume that its proof would have survived various motions to dismiss, for summary judgment, and for directed verdict in order for the case to make it to a jury and for the court to further assume that the jury would have awarded the speculative amount claimed as full compensation for damages. The Estate's projections of an award had the case gone to trial were speculative and would have required the circuit court to consider information and scenarios that had not occurred and might not occur.
As previously noted, "[t]he standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence." Hartness , 2015 Ark. 444, at 10, 475 S.W.3d at 565. Great weight is given to the circuit court's personal observations. Wilson v. Ark. Dep't of Human Servs. , 2015 Ark. App. 666, at 10, 476 S.W.3d 816, 823. "Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder." Hartness , 2015 Ark. 444, at 10, 475 S.W.3d at 565.
We also note that the proportional approach proposed by the Estate overlooks the certainty and objectivity of past medical damages. Here, the medical bills paid by Medicaid are the only certain and quantifiable part of the settlement. Even the Estate's trial counsel acknowledged that at a minimum, the Estate would have asked for what Medicaid had paid. The proportional approach also ignores the policy considerations inherent in Medicaid's recovery laws, which are based on the complementary premises that (1) a tortfeasor (and no other party) should be liable for paying for the harm that the tortfeasor caused, and (2) Medicaid is the payer of last resort. See Ahlborn , 547 U.S. at 291, 126 S.Ct. 1752 ; Ark. Code Ann. § 20-77-101. Additionally, the laws authorizing DHS's repayment from a Medicaid recipient's third-party settlement were enacted to protect the integrity of the Medicaid program by preventing a Medicaid recipient from recovering payment for medical costs that he or she never paid in the first place.
Accordingly, the circuit court did not err in awarding DHS the full $ 260,209.99 for *700 the past medical bills paid by Medicaid. This award represented 5.8 percent of the total $ 4,450,000 the Estate recovered in its lawsuit. The only restriction that the Ahlborn court placed on DHS's repayment is that DHS cannot infringe on the nonmedical-damages portion of a recipient's settlement. See Ahlborn , 547 U.S. at 284-85, 126 S.Ct. 1752. When the circuit court awarded full repayment of the past medical bills paid by Medicaid, the circuit court, in effect, determined that 5.8 percent of the total $ 4,450,000 recovery represented the past-medical-expenses portion of the settlement. It was the Estate's burden to prove the amount of the settlement that constituted non-past medical expenses, and the circuit court specifically found that it failed to do so. The Estate does not claim any of the amount awarded to DHS infringes on a nonmedical-damages portion of the settlement; thus, it cannot claim it was awarded in error.
Affirmed.
Vaught and Hixson, JJ., agree.

St. Vincent Infirmary Medical Center settled the claim for $ 3,500,000; and Betty L. Orange, D.O., and Just for Women Health Center, P.A., settled the claim for $ 950,000.

The lien amount constitutes 5.85 percent of the total settlement.

The predominant factor is the estimated nursing care Khyree will always need.

The doctor carried only $ 1,000,000 in liability insurance.