Cite as 2023 Ark. 51

# SUPREME COURT OF ARKANSAS

No. CV-22-698

|  |  |
|---|---|
| CITY OF FORT SMITH, ARKANSAS<br>APPELLANT<br><br>V.<br><br>JENNIFER MERRIOTT, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED<br>APPELLEE | Opinion Delivered: March 16, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT<br>[NO. 66FCV-17-637]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br>REVERSED AND DISMISSED. |

**RHONDA K. WOOD, Associate Justice**

Jennifer Merriott, on behalf of the citizens and taxpayers of Fort Smith (Class), sued the City of Fort Smith after discovering that Fort Smith was dumping nearly all its recyclables in a landfill. Merriott claimed that Fort Smith's continued collection of monthly sanitation charges, which purportedly included fees for recycling, was an illegal exaction and that Fort Smith had been unjustly enriched. The circuit court agreed and awarded the Class $745,057.85. Fort Smith appeals the merits, and we reverse and dismiss.

## I. *Background*

Fort Smith's residential-recycling program, which was initiated in the 1980s, is operated by Fort Smith's sanitation department. By ordinance, Fort Smith set the residential fee for the collection and disposal of solid waste, which included curbside pickup of trash, recyclables, and yard waste. During the relevant time, the unified sanitation fee was $13.28 per month. Fort Smith did not charge a separate, independent fee for curbside recycling.

The collected fees were deposited into Fort Smith's sanitation enterprise fund, which supported the sanitation department's operating expenses.[1]

For years, Fort Smith had a no-cost processing contract for recycled waste, meaning that its recycling-process vendor did not charge Fort Smith to accept and process its recyclables. In 2014, the contract expired, and the processor proposed a $35 per-ton processing fee to continue the service. Fort Smith did not renew the contract and thus began a multiyear process in which Fort Smith admittedly dumped most of its recycling. It continued to run a separate curbside-recycling route, advertise its recycling program, and give warning stickers to residents that failed to properly separate their trash and their recyclables. This occurred despite Fort Smith's practice of dumping the recyclables.

In April 2017, following press coverage, citizens learned that Fort Smith was sending all the residents' recyclables to a landfill. Eventually, Fort Smith admitted to the practice. After this public discovery, Fort Smith contracted with a new recycling-process vendor in July 2017.

Merriott filed this class-action lawsuit against Fort Smith for the misuse of sanitation fees.[2] She raised two claims: illegal exaction and unjust enrichment. Merriott claimed that Fort Smith collected monthly sanitation fees from its residential customers but did not actually process the recyclables. She also alleged that Fort Smith deceived citizens from

---

[1]Separate fees for commercial and industrial collection and landfill-disposal fees, which are not at issue here, are also deposited into the sanitation enterprise fund.

[2]Fort Smith previously appealed the circuit court's denial of its motion to compel class notice. We reversed and remanded. *City of Fort Smith v. Merriott*, 2020 Ark. 94, 593 S.W.3d 481.

October 2014 to May 2017 by having them believe that the recyclables were being recycled when they were instead being dumped into a landfill. She alleged the sanitation fees constituted an illegal exaction because they included recycling services, but the residents did not actually receive the benefit of recycling services. She also claimed Fort Smith was unjustly enriched because it received the benefit of the fees for recycling and those paying the fees expected to have their waste recycled, but Fort Smith did not recycle.

The circuit court held a bench trial on the illegal-exaction and unjust-enrichment claims. It concluded that the sanitation fees constituted an illegal exaction in violation of article 16, section 13 of the Arkansas Constitution because recycling was a separate benefit and service paid for by residents that they did not receive. It also concluded that Fort Smith was unjustly enriched because the Class paid money expecting to receive recycling services. It awarded the Class $745,057.85 in damages. Fort Smith appealed this judgment.

II. *Analysis*

A. Standard of Review

Our standard of review from a bench trial is whether the circuit court's findings are clearly erroneous. *Williams v. Baptist Health*, 2020 Ark. 150, at 14, 598 S.W.3d 487, 497. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the firm conviction that a mistake has been made. *Id*. But a circuit court's conclusions on questions of law are reviewed de novo. 2020 Ark. 150, at 14–15, 598 S.W.3d at 498.

3

B. Illegal Exaction

Our constitution provides that citizens of any city, county, or town may bring suit for illegal exactions. Ark. Const. art. 16, § 13. An illegal exaction is the imposition of a tax or other expenditure of public funds for an unauthorized purpose or one contrary to law. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). Fort Smith argues that its sanitation fees are not taxes and that the illegal-exaction claim for the misapplication of public funds from tax revenue fails for this reason. Merriott responds that fees can be "denominated as a tax" for illegal-exaction purposes. Merriott is correct. Illegal-exaction claims do not depend on the government's label of the charge as a fee or a tax. A governmental levy of any charge is subject to an illegal-exaction claim unless it meets both elements of the following two prong test: (1) it is fair and reasonable; and (2) it bears a reasonable relationship to the benefits conferred on those receiving the services. *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995).[3]

Here, the circuit court agreed the fee was fair and reasonable but found that an illegal exaction occurred because of Fort Smith's flagrant deceit. The circuit court held that citizens paid a sanitation fee for what they thought included recycling. Fort Smith then committed

---

[3]For example, in *Barnhart*, we held that a city sanitation fee was an illegal tax because the revenue was spent to pay bond debt owed by another city and county and was not reasonably related to providing sanitation services. *Barnhart*, 321 Ark. at 205–06, 900 S.W.2d at 542–43. We said its "true character" made it illegal. *Id.* Yet in *Baioni*, we held that a municipality's water fee of $150 to tap and access its system, when the true cost was around $20, was not an illegal tax but a permissible fee. *City of Marion v. Baioni*, 312 Ark. 423, 427, 850 S.W.2d 1, 3; *Watson v. City of Blytheville*, 2020 Ark. 51, at 10, 593 S.W.3d 18, 24 ("We have previously rejected the argument that simply because a utility fee generates a surplus in a utility fund, the exaction must be a tax.").

4

an illegal exaction when it failed to disclose it wasn't using the fee for that purpose. This reasoning is emotionally compelling but fails to satisfy the second prong of the test. Once a fee is determined fair and reasonable, the question is whether it bears a reasonable relationship to the benefits conferred. *Barnhart*, 321 Ark. at 205–06, 900 S.W.2d at 542–43.

Fort Smith used the fee for its intended purpose. The Fort Smith ordinance set a single fee for the cost of residential collection and disposal of solid waste, recycling, and yard waste. And Fort Smith spent the funds on the collection and disposal of solid waste, recycling, and yard waste. No evidence showed that the fee did not bear a reasonable relationship to the benefits conferred. The circuit court's findings that Fort Smith failed to notify the public, deceived citizens, and destroyed public trust are indisputable. But those facts do not make the sanitation fee's relationship to the services less reasonable.

Also there was no evidence of unauthorized use of the fees. The charges were maintained in the sanitation enterprise fund, which Fort Smith used to operate the sanitation department. The fee wasn't collected for sanitation services and then spent for nonsanitation purposes. Nor were the residents charged a separate fee specifically designated for recycling their recyclables, which was spent on other services. Fort Smith charged a unified fee that Fort Smith could, and did, spend within the sanitation department.

Thus, even though Fort Smith continued to collect recyclables and general trash separately and appeared to run a recycling program, it still used the sanitation fee to collect and dispose of sanitation. Because the circuit court's finding that the fee was an illegal exaction was clearly erroneous, we reverse and dismiss the illegal-exaction claim.

## C. Unjust Enrichment

Fort Smith also appeals the circuit court's finding that it was unjustly enriched. To find unjust enrichment, a party must have received something of value, to which it is not entitled and which it must restore. *Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005). An action based on unjust enrichment is maintainable where a person has received money or its equivalent in the context that, in equity and good conscience, he or she ought not to retain. *Id.*

The circuit court granted Merriott's claim for unjust enrichment because it concluded that a portion of the sanitation fee funded the recycling program. The circuit court's order explained:

> [T]he class paid money expecting, in part, to receive recycling services. Further, Fort Smith accepted that money knowing the expectations of those paying the money and that the reasonable value of the expected services has been established.

It awarded damages in the amount Fort Smith paid to run the curbside-recycling operation even though it was not recycling. On appeal, Fort Smith argues that Merriott presented no evidence on which restitution for unjust enrichment can be based. We agree.

"To measure damages, the courts look at the plaintiff's loss or injury; to measure restitution, the courts look at the defendant's gain or benefit." *Hartness v. Nuckles*, 2015 Ark. 444, at 8, 475 S.W.3d 558, 564. A claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched. *Id.* If the claimant's evidence will not yield even a reasonable approximation of damages, the unjust enrichment is merely speculative, and restitution will not be awarded. *Id.* (citing *Restatement (Third) of Restitution and Unjust Enrichment* § 51 cmt. i (2011)).

6

We agree with Fort Smith that Merriott's restitution evidence was merely speculative. To meet her burden, Merriott had to show what unjust benefit Fort Smith gained that it must return. Merriott did not introduce any evidence of the unjust value of the benefit Fort Smith received from the Class. Again, the Class paid a sanitation fee for sanitation services. But Merriott offered no evidence that Fort Smith gained anything from its deception. While Fort Smith's decision to suspend the program conflicts with the public policies of both Fort Smith and the State of Arkansas, no evidence showed that Fort Smith profited or otherwise benefited from its actions. Unjust enrichment does not exist to punish but to restore wrongful benefits, and there was no evidence that Fort Smith retained financial benefits from its actions that could be returned to the Class.

In sum, the damages evidence Merriott presented—the cost of Fort Smith's fake recycling program—is not a valid measure of restitution. And because Merriott presented no evidence of Fort Smith's wrongful gain from the suspension of the recycling operation, the circuit court's restitution award was clearly erroneous. Therefore, we reverse and dismiss the unjust-enrichment claim.

Reversed and dismissed.

WOMACK, J., concurs.

**SHAWN A. WOMACK, Justice, concurring.** A government-imposed exaction, regardless of its name, is illegal if it violates our constitution, a statute, or other law. Despite the dishonest and misleading actions of the City here, the imposition of the fee at issue was authorized by statute, and the funds collected were used in a manner authorized by law. Accordingly, Jennifer Merriott's illegal-exaction claim fails because the City of Fort Smith's

7

fee was not illegal, not because it was fair and reasonable. Our constitution provides that "[a]ny citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any *illegal* exactions whatever." Ark. Const. art. 16, §13 (emphasis added). Although a government fee might be unreasonable or unfair, it may nevertheless be legal. Similarly, a fee may be completely reasonable and fair but nevertheless illegal.

Arkansas law requires that "[a]ll municipalities shall provide a solid waste management system which will adequately provide for the collection and disposal of all solid wastes." Ark. Code Ann. § 8-6-211(a) (Repl. 2022). To effectuate this requirement, "[t]he governing body of the municipality shall have the authority to levy and collect such fees and charges and require such licenses as may be appropriate to discharge its responsibility under this subchapter, and the fees, charges, and licenses shall be based on a fee schedule as set forth in an ordinance." *Id* § 8-6-211(b)(1). In accordance with this statute, the City adopted ordinances in 2007, 2013, and 2015, which governed the City's solid-waste disposal and were in effect during the recycling disruption. In short, these ordinances set a fee for residential sanitation services, which did not expressly include recycling, and established various procedures for solid waste collection.

The City's deception notwithstanding, the fee—an exaction—was not illegal. Because the recycling program was voluntary and offered to the City's residents at no extra cost, Merriott paid the same fee as a resident who did not participate in the City's recycling program. Absent a municipal ordinance to the contrary, no law requires a city to maintain a recycling program—let alone a recycling program that actually recycles 100 percent of the

8

materials collected. *See* Ark. Code Ann. § 8-9-203(a) (requiring cities, among other governmental entities, to establish a recycling program for *government-generated* but not resident-generated recyclables). In fact, state law explicitly vests cities with the discretion to implement recycling programs.

Arkansas Code Annotated section 8-6-211(e) provides:

> The governing body of a municipality shall have the right to establish policies for and enact laws concerning all phases of the operation of a solid waste management system, including . . . the character and kinds of wastes accepted at the disposal site, the separation of wastes according to type by those generating them prior to collection, the type of container for storage of wastes, the prohibition of the diverting of recyclable materials by persons other than the generator or collector of the recyclable material, the prohibition of burning of wastes, the pretreatment of wastes, and such other rules as may be necessary or appropriate, so long as the laws, policies, and rules are consistent with, in accordance with, and not more restrictive than those adopted by, under, or pursuant to this subchapter or any laws, rules, or orders adopted by state law or incorporated by reference from federal law, the commission, or the regional solid waste management boards or regional solid waste management districts . . . .

Simply put, while the statute authorizes municipal governments to establish and maintain recycling programs, it also vests them with the discretion to do so or not, and there is no requirement in Arkansas law that cities must implement residential recycling programs. *See id.* Although the General Assembly has announced it is the public policy of this state "to encourage and promote recycling in order to conserve natural resources, conserve energy, and preserve landfill space[,]" this is a stated "goal" of the legislature and is not a requirement placed upon cities. Ark. Code Ann. § 8-9-101.

Because there was no separate fee charged for the City's recycling services, each household paid the same fee whether the City "picked-up" its recycling or not.

Consequently, the City's operations were consistent with the relevant ordinances and state law and were, therefore, legal. Thus, I would reverse the circuit court's illegal-exaction judgment for the foregoing reasons.

I respectfully concur.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield* and *Colby T. Roe*, for appellant.

*Monzer Mansour* and *W. Whitfield Hyman*, for appellee.